EXCHANGE NATIONAL BANK OF FITZGERALD *v.* McDONALD *et al.*

No. 10084. SEPTEMBER 17, 1934.

*McDonald & McDonald,* for plaintiff in error.
*Melville Price* and *Edwin A. Cohen,* contra.

BECK, P. J. The Exchange National Bank of Fitzgerald filed its petition in equity against J. Lane McDonald, Myrtle McDonald Terrell, Harry L. McDonald et al., alleging that it was the holder and owner of certain promissory notes given by the defendants,

which had been indorsed and delivered to the bank by one Dorminey. The prayers of the petition were for judgment in its favor for the principal and interest of these notes, for cancellation of certain deeds alleged to have been fraudulently executed, for injunction and other equitable relief. The defendants filed their answers and set forth their contentions that the plaintiff was not entitled to judgment against them on the notes and was not entitled to the equitable relief prayed for. To these answers the plaintiff filed its demurrer. The court referred the case to an auditor to pass upon all issues of both law and fact. In due time the auditor filed his report. The plaintiff filed a motion to recommit the case to the auditor, and filed its exceptions of law and of fact to the report. The court overruled the motion to recommit, and afterward over- ruled and disallowed all of the exceptions to the auditor's findings of law and of fact. The plaintiff "then and there excepted, and now excepts, and says that the court erred in overruling and dis- allowing said exceptions to the auditor's findings of law and to the auditor's findings of fact, and assigns these rulings as error as be- ing contrary to law, and says that the court should have sustained said exceptions to the auditor's findings of fact and to the auditor's findings of law upon all the grounds therein stated." Subse- quently the court entered "a final decree in said case in favor of the defendants and against the plaintiff, to which ruling on the part of the court the plaintiff, the Exchange National Bank, ex- cepted and now excepts as being contrary to law, because, the court having overruled the motion to recommit said case to the auditor filed by the plaintiff, and having overruled the exceptions filed by the plaintiff to the auditor's findings of fact and to the auditor's findings of law, and these rulings being controlling in effect, said final decree and judgment could not be a legal determination of the case, and plaintiff in error assigns said ruling of the court in enter- ing said final decree and judgment as error for the reasons set out."

The defendants in error filed a motion to dismiss the writ of error, on two grounds. First, because the former Judge Daniel (the judge who certified the bill of exceptions) had no authority to entertain or certify the bill of exceptions after retirement from the judgeship, this being a fast bill of exceptions. There is no merit in this ground. The plaintiff was seeking a judgment on certain notes of which it alleged itself to be the owner and holder;

and in addition it asked for certain equitable relief. There was a regular trial and a disposition of the case by judgment and decree, which would have been final but for the appeal to this court. A bill of exceptions sued out to review such final decree and judgment does not fall under the classification of fast bills. It is an ordinary bill of exceptions. See *Gordon* v. *Gordon,* 109 *Ga.* 262 (34 S. E. 324). The first ground of the motion to dismiss is without merit. The second ground of the motion to dismiss is that the bill of exceptions "falls, because the exception which goes to the final decree is too vague, indefinite, uncertain, incomplete, and confusing to be considered by the court."

The exception to the final judgment is set forth above. Under the law it is sufficiently clear and distinct. The exceptions to the findings of the auditor on questions of law and fact set forth the reasons upon which the plaintiff relied to have those exceptions set aside. The motion to recommit set forth the plaintiff's reasons upon which it insists the case should be recommitted to the auditor. It is not necessary to repeat these reasons. The alleged errors in overruling the motion to recommit, and the exceptions to the findings of the auditor, if these rulings were erroneous, entered into the final judgment; and under the ruling in *Lyndon* v. *Ga. Ry. & El. Co.,* 129 *Ga.* 353 (58 S. E. 1047), this was a sufficient assignment of error. The motion to dismiss is overruled.

■ We are of the opinion that the motion to recommit the case to the auditor should have been sustained. That motion contained a number of grounds, many of them clearly without merit. But more than once in the motion is set forth the ground that the auditor failed in his report to clearly and separately state all the rulings made by him, and failed to classify and state his findings and report his conclusions upon the law and the facts. We will not set forth in detail the findings of the auditor, but we call attention to parts of his report, from which it clearly appears that he did not comply with the law which requires him to clearly and separately state all rulings made by him, and classify and state his findings and report his conclusions upon the law and the facts. Under his classification as "findings of fact," we find the following:

"It is the opinion of the auditor that the bank, plaintiff, in accepting the transfer of the contract between Dorminey and the McDonalds, was subrogated fully to each and all of the rights, powers,

and remedies and penalties imposed upon or conferred upon A. B. C. Dorminey. It appearing from the evidence that A. B. C. Dorminey, transferor to the plaintiff, obligated in his contract with W. S. Lang to pay off and discharge the indebtedness due the Federal Land Bank of Columbia by said Lang at the end of five years from the date of the loan deed, said date of said deed being June 25th, 1920, this obligation was binding on Dorminey; and it is the opinion of the auditor that the same was binding on the plaintiff, and a failure by the plaintiff to carry out this obligation necessarily incurred the penalty that Lang should take possession of the property contracted to be sold, and thus put the plaintiff and Dorminey in position that neither could ever make good and merchantable titles and deeds to the lands agreed to be sold by Dorminey to the McDonalds. This failure on the part of the plaintiff has caused a waste or loss of the security pledged, for which these defendants ought not to be held liable.

"The deed from Lang to the Federal Land Bank provided for yearly payments covering a period of something like thirty-four years. Dorminey's contract was quite different. He and the plaintiff bank, by way of subrogation, contracted to pay it off in five years, and created a penalty of loss of the property contracted for if they failed to pay same off in that time. The auditor must and does find that W. S. Lang exercised his right to retake possession of the property, and excluded plaintiff, the defendants, and all other persons.

"It is insisted by plaintiff that certain provisions in the contract with reference to heirs, executors, administrators, and assigns had a binding effect on the defendants, because said contract between Lang and Dorminey was of record. The auditor finds that this contention is not well founded. In the first place, Dorminey, for whose protection that provision was placed in his contract with Lang, had a right to waive its terms; and the auditor finds that when he entered into another and quite different contract as to its terms with the McDonalds, this amounted to a waiver of any benefit he had under the provision referred to. In the second place, Lang, for whose real protection this condition was placed in the contract, was the only man who had a right to claim that a subsequent purchaser was bound by such provisions. He exercised this right against both plaintiff and these defendants.

"The auditor recognizes the rule that holders of promissory notes, etc., are presumed to be bona fide holders, if taken before maturity. However, it appears from the undisputed evidence that while the plaintiff is such a holder, the plaintiff is not protected by the rule any further than the contracts with reference to the same subject-matter aforesaid. Therefore the plaintiff took the contract from Dorminey with the deed from Lang to the Federal Land Bank of Columbia and the contract from Lang to Dorminey staring the plaintiff in the face (all being of record). The law, in the opinion of this auditor, said to the plaintiff at the time of taking the contract and notes from Dorminey: 'If you perform Dorminey's contract with Lang and pay off the indebtedness due the Federal Land Bank of Columbia, as Dorminey agreed to do, you will own the property in question and convey to the McDonalds. But if you fail to perform Dorminey's solemn agreement and allow Lang to take the property back, which was the sole consideration for the notes you are taking, then you lose the property and you can not enforce the notes against the McDonalds. What could the defendants obtain for their money if they should voluntarily offer to pay the full amount of the notes sued on? The answer is clear, nothing. The plaintiff has put itself into position where it can not make deeds to the lands agreed to be bought by the defendants, as a result of the failure of the plaintiff to carry out its agreement, subrogated or inherited from A. B. C. Dorminey.

"Furthermore, the plaintiff failed entirely to prove any indebtedness due by the said A. B. C. Dorminey to the plaintiff. This was incumbent on the plaintiff, in the opinion of the auditor. Under the undisputed evidence for the plaintiff, A. B. C. Dorminey contracted with one W. S. Lang for the purchase of certain property described therein, and contracted as part of the consideration thereof to pay off a farm loan due with said Lang to the Federal Land Bank of Columbia, S. C. This was necessary for him to acquire title to the property, the subject-matter of this suit. And when he transferred to the plaintiff, under the law of subrogation the plaintiff was subrogated to all of the rights, interest, and penalties assumed or undertaken by the said Dorminey, which created the relation of principal and surety. This auditor believes and concludes that the plaintiff, by not paying amount due Federal Land Bank as per contract of Dorminey, allowed Lang to re-enter and take

possession of the property, and thereby caused a loss of the same, and in so doing increased the risk of these defendants, who were only securities for Dorminey's contract, and thereby released them. Any act of the principal which injures the security or increases the risk or exposes him to greater liability will discharge him, and in the opinion of this auditor this act or omission of the plaintiff allowed the loss of the security and thereby discharged the defendants."

It is obvious from a reading of this part of the auditor's report (and this is the larger part of it on questions of fact) that he did not clearly and separately state all rulings made by him, classify and state his findings, and report his conclusions upon the law and facts; but in this part of his "findings of fact" the auditor commingled and confused statements of fact and statements of law with argument of his own, part of which referred to both principles of law and facts found to be true or facts alleged. While there are several other "findings of fact," this was by far the larger part of the findings.

In *Southern Pine Co.* v. *Dickey,* 136 *Ga.* 662 (71 S. E. 1110), it was said "that the report of an auditor which failed to 'clearly and separately state all rulings made by him, classify and state his findings,' or in which his findings commingled matters of fact, of law, of argument, and conclusions of law, was not in compliance with the provisions of the statute quoted, and should, upon motion of the party dissatisfied therewith, have been recommitted for the purpose of requiring the auditor to clearly and separately state all his rulings, and to classify them into findings of fact and findings of law, and after so doing to report his conclusions of the law and the facts to the court. . . There are good reasons for the requirement of the statute that all rulings made by the auditor should be clearly and separately stated, and that his findings of fact and of law should be separately classified. If the findings of an auditor should commingle matters of fact, of law, of argument, and conclusions of law, the party desiring to except to such findings in so far as they related to a fact or facts would, in a case at law, be placed at a disadvantage when the issue made by his exceptions to such findings was submitted to the jury, because the whole finding in which law, fact, argument, and conclusions of law were commingled would have to be read to the jury, and in this way they

might be unduly influenced by the matters of argument and law to the prejudice of the excepting party. Moreover, a party desiring to file exceptions to the report of an auditor is required to separately classify them as 'exceptions of law,' and 'exceptions of fact,' and all such 'exceptions shall clearly and distinctly specify the errors complained of.' Civil Code (1895), § 4589; Ib. (1910), § 5135. The requirement of the statute in respect to clear and separate rulings made by an auditor, and the classification of them into findings of law and findings of fact, necessarily tends to greatly aid parties desiring to except to his findings and to classify his exceptions as exceptions of law and of fact, and to relieve parties in making issues by exceptions, and the court in the disposition of them."

In view of what is said above, we do not deem it proper to pass upon any of the other assignments of error. After the report has been recommitted and another report made in accordance with the rulings we have announced, either party will be at liberty to take such exceptions thereto as are proper. This was the direction given in the case just cited, and we follow it here.

*Judgment reversed. All the Justices concur.*